# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| In re | : Chapter 11 |
| iHEARTMEDIA, INC., *et al.*,[1] | : Case No. 18-31274 (MI) |
| Debtors. | : (Jointly Administered) |
| | : |
| WILMINGTON SAVINGS FUND SOCIETY, FSB, solely in its capacity as successor indenture trustee to the 6.875% Senior Notes due 2018 and 7.25% Senior Notes due 2027, and not in its individual capacity, | : |
| Plaintiff, | : |
| and | : |
| DELAWARE TRUST COMPANY, | : Adversary Proceeding No. 18-03052 (MI) |
| Intervenor Plaintiff, | : |
| vs. | : |
| iHEARTCOMMUNICATIONS, INC. f/k/a Clear Channel Communications, Inc., AMFM Broadcasting Licenses, LLC, AMFM Broadcasting, Inc., AMFM Operating, Inc., AMFM Radio Licenses, LLC, AMFM Texas Broadcasting, LP, AMFM Texas Licenses, LLC, AMFM Texas, LLC, Capstar Radio Operating Company, and Capstar TX, LLC, | : |
| Defendants, | : |
| and | : |

---

[1] Because of the large number of Debtors in these jointly administered Chapter 11 Cases, a complete list of the Debtors and the last four digits of their tax identification, registration, or like numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at http://cases.primeclerk.com/iheartmedia. The location of Debtor iHeartMedia, Inc.'s principal place of business and the Debtors' service address is: 20880 Stone Oak Parkway, San Antonio, Texas 78258.

| | |
|---|---|
| Davidson Kempner Distressed Opportunities Fund LP, Davidson Kempner Distressed Opportunities International Ltd., Davidson Kempner Institutional Partners, L.P., Davidson Kempner International, Ltd., Davidson Kempner Partners, Franklin Custodian Funds - Franklin Income Fund, Franklin Mutual Series Funds – Franklin Mutual Beacon Fund, Franklin Mutual Series Funds – Franklin Mutual Global Discovery Fund, Franklin Mutual Series Funds – Franklin Mutual Shares Fund, Franklin Mutual Series Funds – Franklin Mutual Quest Fund, Franklin Templeton Variable Insurance Products Trust - Franklin Income VIP Fund, Gordel Capital Limited, Midtown Acquisitions L.P., M.H. Davidson & Co., OZ Credit Opportunities Master Fund, Ltd., OZ Enhanced Master Fund, Ltd., OZ GC Opportunities Master Fund, Ltd., OZ Master Fund, Ltd., OZSC II, L.P., PIMCO Balanced Income Fund (Canada), PIMCO Bermuda Trust II: PIMCO Bermuda Income Fund (M), PIMCO Bermuda Trust IV: PIMCO Global High Yield Strategy Fund, PIMCO Global Income Opportunities Fund, PIMCO Horseshoe Fund, LP, PIMCO Monthly Income Fund (Canada), | : : : : : : : : : : : : : : : : : : : : : : : : : : |
| Intervenor Defendants[2]. | |

## SENIOR CREDITORS' EMERGENCY MOTION FOR A PROTECTIVE ORDER

---

[2] The Intervenor Defendants are collectively referred to as the "Senior Creditors."

> **THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. UNLESS THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS (SEE BELOW), YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**
>
> **EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.**
>
> **A HEARING WILL BE HELD ON THIS MATTER FOR MAY 30, 2018 at 10:30 AM (CT) BEFORE THE HONORABLE MARVIN ISGUR, 515 RUSK AVENUE, COURTROOM 404, HOUSTON, TEXAS 77002. REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

The Senior Creditors respectfully move this Court for entry of a protective order, on an emergency basis pursuant to Local Bankruptcy Rule 9013-1(i), quashing the Notice of Deposition sent by Plaintiff Wilmington Savings Fund Society, FSB's ("WSFS") to the Intervening Senior Creditors (the "Deposition Notice" attached hereto as Exhibit 1) and preventing the depositions sought by that Deposition Notice from going forward.

As articulated in more detail below, the Deposition Notice seeks to take depositions, pursuant to Rule 30(b)(6), of each of the twenty-five Senior Creditors on a variety of topics relating to the various indentures and loan agreements at issue in this case. The Senior Creditors, however, are merely investors who were not involved in their drafting or negotiation. Recognizing that fact, WSFS did not name the Senior Creditors as defendants, and the Senior Creditors intervened solely to protect their interests in and claims against the Debtor-Defendants.

The Senior Creditors have no relevant information to provide on any of the topics listed in the Deposition Notice, rendering the Deposition Notice burdensome and harassing. The Senior Creditors therefore request, on an emergency basis, that the Court enter a protective order under Rule 26(c)(1) of the Federal Rules of Civil Procedure, as incorporated by Rule 7026 of the Federal Rules of Bankruptcy Procedure, preventing the depositions from going forward.

## BACKGROUND

1. This adversary proceeding is predicated on the rights and obligations created under a series of contracts. The Senior Creditors were not involved in the formation of any of the contracts.

2. One of these contracts is an indenture dated October 1, 1997 (the "Legacy Indenture"), between the predecessor to Defendant iHeart Communications, Inc. ("iHeart") and the-then trustee to the so-called "Legacy Notes," of which WSFS is the successor indenture trustee. Section 1006 of the Legacy Indenture contains a negative covenant (the "Negative Covenant") by which iHeart promised that it "will not, nor will it permit any Restricted Subsidiary to, create, assume, incur or suffer to exist . . . any Mortgage upon any Principal Property, whether owned or leased on the date of this Indenture, or thereafter acquired, to secure any Debt of the Company or any other person (other than the Securities) without in any such case making effective provision whereby all of the Securities Outstanding [the Legacy Notes] shall be directly secured equally and ratably with such Debt." Legacy Indenture § 1006. The Legacy Indenture is governed by New York law.

3. A second set of relevant contracts are five Priority Guarantee Notes Indentures (the "PGN Indentures"), between iHeart, iHeart subsidiaries, various indenture trustees, and Deutsche Bank Trust Company Americas ("Deutsche Bank") as Collateral Agent, pursuant to which iHeart issued five series of Priority Guarantee Notes ("PGNs") annually between 2011

and 2015. Unlike the Legacy Notes, which are obligations only of iHeart, the PGNs were guaranteed by many of iHeart's subsidiaries, including all of the other Defendants in this case (the "Subsidiary Defendants")[3] The Senior Creditors are holders of the PGNs.

4. Unlike the Legacy Notes, which are unsecured, the obligations of iHeart and the Subsidiary Defendants in respect of the PGN Indentures were secured pursuant to a series of securities and pledge agreements, including certain Principal Property Security Agreements ("PPSAs") between the Subsidiary Defendants and Deutsche Bank. Both the PGN Indentures and the PPSAs are governed by New York law.

5. After the Debtors filed their chapter 11 bankruptcy petitions, WSFS filed this adversary proceeding against iHeart and the Subsidiary Defendants, alleging that the PPSAs and the security interests granted under the PPSAs violated the Legacy Indenture's Negative Covenant. (Complaint, Adv. D.I. 1.) WSFS further claimed that the Defendants concealed the PPSAs and the security interests granted thereunder. WSFS asserts that, as a result, it is entitled to liens and claims not only against iHeart – the obligor and contract-counterparty in respect of the Legacy Notes – but also against the Subsidiary Defendants – who have no obligations to WSFS or holders of the Legacy Notes.

6. Notably, WSFS did not name the Senior Creditors as defendants. This is unsurprising: the Senior Creditors were not involved in the negotiation or drafting of any of the aforementioned agreements. Indeed, the Senior Creditors have no connection to the facts underlying this dispute other than that they own the PGNs that WSFS argues were issued in violation of the Negative Covenant. Nonetheless, because the relief requested by WSFS

---

[3] The Subsidiary Defendants are: AMFM Broadcasting Licenses, LLC, AMFM Broadcasting, Inc., AMFM Operating, Inc., AMFM Radio Licenses, LLC, AMFM Texas Broadcasting, LP, AMFM Texas Licenses, LLC, AMFM Texas, LLC, Capstar Radio Operating Company, and Capstar TX, LLC.

- 4 -

threatens to impair and dilute the Senior Creditors' claims and security interests against the Defendants, the Senior Creditors moved to intervene as additional defendants. (Senior Creditors' Motion to Intervene, Adv. D.I. 44.) The Court authorized intervention on April 12, 2018. (Adv. D.I. 65.)

7. On May 1, 2018, WSFS served the Deposition Notice, by which it seeks to depose a corporate representative of each of the twenty-five Senior Creditors pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure. The Deposition Notice seeks testimony of the Senior Creditors' knowledge and understanding of nine topics, which can be grouped into three categories: (1) the operation and interpretation of the PPSAs, the Legacy Indenture, the PGN Indentures, and the Term Loan Credit Agreement (Topics 1-5, 8); (2) public filings made by other parties – specifically, UCC-1 filings by Deutsche Bank to perfect security interests granted under the PPSAs and SEC filings made by the Defendants (Topics 6-7); and (3) communications between the Senior Creditors and the Debtors regarding various provisions of the PPSAs and Legacy Indenture (Topic 9). (*See* Ex. 1.)

8. On May 10 and 14 2018, counsel for the Senior Creditors spoke with counsel for WSFS and discussed whether agreement could be reached whereby WSFS would agree to withdraw the Deposition Notice. No such agreement has been reached.

## ARGUMENT

9. Rule 26(c)(1) of the Federal Rules of Civil Procedure, as made applicable here by Rule 7026 of the Federal Rules of Bankruptcy, provides, in relevant part that "[a] party or any person from whom discovery is sought may move for a protective order [and] the court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: . . . forbidding the disclosure or discovery." Fed. R. Civ. P. 26(c)(1).

10.     Here, the Senior Creditors seek a protective order quashing the Deposition Notice and prohibiting the depositions sought by WSFS.  The Senior Creditors were not involved in the drafting or negotiation of the contracts that are the subject of the Deposition Notice.  The personal knowledge of the Senior Creditors regarding contracts they were not involved in forming is irrelevant to the Court's interpretation of those contracts and resolution of this case.  Further, the Senior Creditors do not intend to testify at trial or offer expert evidence with respect to the interpretation of the relevant agreements.  The Senior Creditors therefore should not be burdened in appearing and preparing for the depositions sought by WSFS.

11.     Parties are permitted "to obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).  Although "relevance" is construed broadly at the discovery stage, "Rule 26(b) has never been a license to engage in an unwieldy, burdensome, and speculative fishing expedition." *Crosby v. Louisiana Health Serv. & Indem. Co.*, 647 F.3d 258, 264 (5th Cir. 2011).  Where, as here, a plaintiff fails to establish the necessity for and relevance of a discovery request, courts protect defendants from having to comply with requests for unnecessary and irrelevant information and testimony.  *See, e.g.*, *Ramos v. Capitan Corp.*, No. MO:16-CV-00075-RAJ-DC, 2017 WL 1278737, at *4 (W.D. Tex. Feb. 2, 2017) (denying, in part, defendants' motion to compel interrogatory responses).

12.     Consistent with this standard, courts prohibit plaintiffs from seeking discovery of creditors' or other third parties' interpretation and understanding of factual issues in a lawsuit

when that information has no bearing on either party's claims or defenses. *See, e.g., In re Energy Future Holdings Corp.*, 513 B.R. 651, 664-65 (Bankr. D. Del. 2014) (denying as irrelevant indenture trustee's discovery requests to members of ad hoc noteholder committee regarding debtors' reasons for filing bankruptcy, refinancing notes, or the consideration noteholders expected to receive under a restructuring agreement).

13. This is particularly true in actions predicated upon the interpretation of a contract governed by New York law (like the contracts in question here), as an entity that is not party to the formation of the contract's "own personal understanding is not relevant to the contract interpretation analysis; rather, what matters is the intent of . . . the corporate entity that was a party to the . . . Indenture." *E.g.*, *MBIA Ins. Corp. v. Patriarch Partners VIII, LLC*, 950 F. Supp. 2d 568, 616 (S.D.N.Y. 2013).

14. The court's decision in *Home Equity Mortgage Trust Series 2006-5 v. DLJ Mortgage Capital, Inc.* is instructive of this principle. No. 653787/2012, 2014 WL 3853657 (N.Y. Sup. Ct. July 28, 2014). There, a trustee brought suit against various loan serving defendants, alleging that those entities breached various representations and warranties contained in a Pooling and Servicing Agreement underlying various trusts. When the defendants sought discovery of the certificate holders who directed the trustee to bring the suit regarding, among other things, their investments in the certificates as well as documents and communications pertaining to the allegations of the complaint, the Court agreed that such materials were "not relevant to the breach of contract issues central to this action" and therefore were not appropriate targets of discovery. *Id.* at *2

15. So too here. As the Deposition Notice reflects, the vast majority of the topics about which WSFS seeks to depose the Senior Creditors relate to the Senior Creditors'

knowledge and understanding of: (1) the various provisions of contracts to which they were not involved in forming; or (2) public filings made by others (UCC-1 filings by Deutsche Bank and SEC filings by iHeart) concerning those same contracts. (*See* Ex. A to Ex. 1 at Topics 1-8). As in *Home Equity Mortgage*, the Senior Creditors' understanding of those contracts and actions by other parties simply have no bearing on the issues in dispute. *See Home Equity Mortgage Trust*, 2014 WL 3853657 at *2.

16. Finally, WSFS's attempt to depose the Senior Creditors on their communications with the Debtors about various provisions of the same contracts (Topic 9) fares no better. First, this topic suffers from the same deficiencies as the other topics, in that it seeks the Senior Creditors' communications about evaluations and understandings of contracts and contract provisions about which they did not negotiate or draft. Second, to the extent WSFS suggests (as it has in the past) that discovery into this topic is aimed at determining whether there was some sort of conspiracy or agreement between the Debtors and Senior Creditors to conceal the PPSAs or breach the Negative Covenant, there is absolutely no claim or allegation against the Senior Creditors in the Complaint to that effect. *See e.g. In re Trevino,* 564 B.R. 890, 919 (Bankr. S.D. Tex. 2017) (plaintiffs' "barebones statement" that information sought in discovery was "highly relevant….does not meet the burden of demonstrating why such an expensive request falls within the scope of discovery"). And with good reason. There is no evidence, or even a colorable explanation, as to why the Senior Creditors would be involved in concealing agreements they were not involved in the creation of.[4] *See Energy Futures*, 513 B.R. at 664 (denying as irrelevant document requests and depositions of individual creditors concerning alleged efforts

---

[4] In response to WSFS's requests for production of documents, the Senior Creditors have agreed to produce any communications with the Debtors prior to the signing of the Restructuring Support Agreement on March 16, 2018 concerning these topics. At the very least, no deposition should take place on this topic unless and until the Senior Creditors produce documents evidencing an alleged conspiracy or understanding.

by debtors avoid a redemption premium where, "apart from conclusory allegations that '[the debtor and creditors] had substantial discussions prepetition regarding a plan to use chapter 11 to deny the redemption premium . . . ,' the Complaint does not contain any factual allegations regarding the intentions and actions of the [creditors]"); *see also Home Equity Mortgage Trust Series 2006-5*, 2014 WL 38353657 at *2 ("The documents and communications from the Directing Certificateholders, will not proffer evidence relevant for plaintiff's claims. The case rests on whether the loans that DLJ sold to the RMBS Trusts were of the quality that DLJ represented they were, namely a breach of contract issue. The Directing Certificateholders' actions or internal thoughts are divorced from this lawsuit.")

17. Contrasted against the lack of any relevance of the subject discovery, the Deposition Notice imposes a significant burden on the Senior Creditors. The twenty-five individual Senior Creditor entities fall into five corporate groups, meaning there will be the need to be at least five depositions if WSFS is allowed to proceed. The Deposition Notice dictates that the depositions will take place in Houston, far from the places of business of any of the Senior Creditors.

18. That burden far outweighs whatever scant relevance the testimony of the Senior Creditors may have in respect of the WSFS's claims. Even when the party seeking discovery establishes its relevance, a court may limit the discovery if "the burden or expense of the proposed discovery outweighs its likely benefit," Fed. R. Civ. P. 26(b)(2)(C)(iii), or if the discovery sought "can be obtained from some other source that is more convenient, less burdensome, or less expensive," Fed. R. Civ. P. 26(b)(2)(C)(i).

## BASIS FOR EMERGENCY RELIEF

19. Pursuant to Bankruptcy Local Rule 9013-1(i), the Senior Creditors respectfully request emergency consideration of the motion. Specifically, the Senior Creditors request that

hearing on the instant motion take place at the already scheduled May 30, 2018 hearing in the adversary case. Consideration of the motion on that date would only shorten the ordinary notice period by five days. In addition, consideration at the May 30 hearing would be more convenient for the Court and all parties, and provides ample time for a response from WSFS (and consideration by the Court) on this relatively discrete issue. Further the Deposition Notice seeks to depose the Senior Creditors on June 13, 2018 and emergency consideration would potentially allow for a resolution of this dispute in advance of that date.

*          *          *

For all of these reasons, the Senior Creditors request that the Court enter an order, substantially in the form attached hereto as Exhibit 2, quashing WSFS's Notice of Deposition and preventing the noticed depositions from going forward.

Dated:  May 14, 2018                Respectfully submitted,

*/s/ Thomas A. Howley*
Thomas A. Howley (TX Bar No. 24010115)
JONES DAY
717 Texas, Suite 3300
Houston, Texas 77002
Telephone:  (832) 239-3939
Facsimile:  (832) 239-3600
Email: tahowley@jonesday.com

- and -

Bruce S. Bennett (*pro hac vice forthcoming*)
Joshua M. Mester (admitted *pro hac vice*)
James O. Johnston (admitted *pro hac vice*)
JONES DAY
555 South Flower Street, Fiftieth Floor
Los Angeles, California  90013
Telephone:  (213) 489-3939
Facsimile:  (213) 243-2539
Email:  bbennett@jonesday.com
          jmester@jonesday.com
          jjohnston@jonesday.com

- 10 -

- and –

Victoria Dorfman (admitted *pro hac vice*)
JONES DAY
51 Louisiana Ave. N.W.
Washington, DC 20001
Telephone: (202) 879-3939
Facsimile: (202) 626-1700
Email: vdorfman@jonesday.com

- and –

Morgan R. Hirst (admitted *pro hac vice*)
JONES DAY
77 West Wacker Drive, Suite 3500
Chicago, Illinois 60601
Telephone:  (312) 782-3939
Facsimile:   (312) 782-8585
Email:  mhirst@jonesday.com

ATTORNEYS FOR THE SENIOR CREDITORS

## CERTIFICATE OF SERVICE

I certify that on May 14, 2018, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Thomas A. Howley*
Thomas A. Howley