# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| In re:<br><br>iHeartMedia, Inc., *et al.*,[1]<br><br>        Debtors. | Chapter 11<br><br>Case No. 18-31274 (MI)<br><br>(Jointly Administered) |
| Wilmington Savings Fund Society, FSB, solely in its capacity as successor indenture trustee to the 6.875% Senior Notes due 2018 and 7.25% Senior Notes due 2027, and not in its individual capacity,<br><br>        Plaintiff,<br><br>and<br><br>Delaware Trust Company,<br><br>        Intervenor Plaintiff,<br><br>        vs.<br><br>iHeartCommunications, Inc., f/k/a Clear Channel Communications, Inc., AMFM Broadcasting Licenses, LLC, AMFM Broadcasting, Inc., AMFM Operating, Inc., AMFM Radio Licenses, LLC, AMFM Texas Broadcasting, LP, AMFM Texas Licenses, LLC, AMFM Texas, LLC, Capstar Radio Operating Company, and Capstar TX, LLC,<br><br>        Defendants,<br><br>and | Adversary No. 18-03052 |

---

[1] A complete list of the Debtors may be obtained on the website of the Debtors' claims and noticing agent at https://cases.primeclerk.com/iheartmedia.  The location of Debtor iHeartMedia, Inc.'s principal place of business and the Debtors' service address is: 20880 Stone Oak Parkway, San Antonio, Texas 78258.

Davidson Kempner Distressed Opportunities
Fund LP, Davidson Kempner Distressed
Opportunities International Ltd., Davidson
Kempner Institutional Partners, L.P.,
Davidson Kempner International, Ltd.,
Davidson Kempner Partners, Franklin
Custodian Funds - Franklin Income Fund,
Franklin Mutual Series Funds – Franklin
Mutual Beacon Fund, Franklin Mutual Series
Funds – Franklin Mutual Global Discovery
Fund, Franklin Mutual Series Funds –
Franklin Mutual Shares Fund, Franklin
Mutual Series Funds – Franklin Mutual Quest
Fund, Franklin Templeton Variable Insurance
Products Trust - Franklin Income VIP Fund,
Gordel Capital Limited, Midtown
Acquisitions L.P., M.H. Davidson & Co., OZ
Credit Opportunities Master Fund, Ltd., OZ
Enhanced Master Fund, Ltd., OZ GC
Opportunities Master Fund, Ltd., OZ Master
Fund, Ltd., OZSC II, L.P., PIMCO Balanced
Income Fund (Canada), PIMCO Bermuda
Trust II: PIMCO Bermuda Income Fund (M),
PIMCO Bermuda Trust IV: PIMCO Global
High Yield Strategy Fund, PIMCO Global
Income Opportunities Fund, PIMCO
Horseshoe Fund, LP, PIMCO Monthly
Income Fund (Canada),

Intervenor Defendants.

## DEFENDANTS' BENCH MEMORANDUM

At pre-trial argument, there was a colloquy in which the Court and counsel discussed the issue of whether the PGN PPSAs constituted "encumbrances" within the Legacy Indenture's definition of "Mortgage" before the collateral flip occurred.   Defendants have prepared this bench memorandum as a supplement to that colloquy.   As set forth below, all of the elements of the defined term "Mortgage" require **attachment** of an interest to the collateral.   Because the PPSAs specifically prevent and postpone attachment of any interest in the Principal Property and subsidiary equity until the Springing Lien Trigger Date, the PPSAs do not constitute a "Mortgage" prior to the collateral flip.

### A.   The PGN PPSAs Do Not Attach any Security Interest of any Kind Prior to the Springing Lien Trigger Date

The PGN PPSAs did not constitute a "Mortgage" over Principal Property or subsidiary equity because they did not grant or attach any interest in this collateral at the time they were executed.   The grant of an interest, attachment of that interest to collateral, and the perfection of that interest are distinct concepts that can occur at separate times.   *In re Modafferi*, 45 B.R. 370, 371 (S.D.N.Y. Jan. 9, 1985).   The UCC, adopted in both Texas and New York, governs when an interest is granted and attached.   Under these statutes, the PPSAs did not grant or attach any interest in the Principal Property or subsidiary equity, and will not do so until the occurrence of the Springing Lien Trigger Date.

UCC § 9-203 governs attachment.   It states that an interest does not attach to collateral until "it becomes enforceable against the debtor."   N.Y. U.C.C. Law § 9-203; Tex. Bus. & Com. Code Ann. § 9.203 (same).   Importantly, this statute also states that parties may agree to "postpone" attachment until the occurrence of a condition subsequent.   *Id.*   That is what happened here.

The PPSA states that "notwithstanding anything to the contrary in this Agreement, this Agreement **shall not constitute a grant of a security interest in any Excluded Asset.**"   DX 008,

1

2015 PGN PPSA (emphasis added).  Excluded Assets are defined to include the restricted collateral in Section 1006 of the Legacy Indenture, and "any assets if pledging or creating a security interest in such assets . . .  would require the grant of equal and ratable security to or for the benefit of the holders of any Legacy Notes under the applicable Legacy Notes Indenture." *Id* § 1.02.  Definition of "Excluded Assets," §§ f, g, & j (emphasis added).  Then, "upon the occurrence of the Springing Lien Trigger Date, the assets specified in clauses (f) and (g) above shall constitute Collateral hereunder and shall no longer constitute Excluded Assets."  DX 008, PGN PPSA at § 1.02, Definition of "Excluded Assets."

The language is straightforward: until the triggering event, the "security interest" granted in § 3.01 expressly excludes the springing collateral.  *Id.*  Therefore, there was no enforceable interest in the springing collateral until the condition subsequent occurred, as the parties had expressly agreed to postpone attachment until that time.  *Id.*  Under U.C.C. § 9-203, such agreement is sufficient to prevent both the grant and attachment of any interest in the Principal Property and subsidiary equity until the Springing Lien Trigger Date.  U.C.C. § 9-203.

Both New York and Texas courts recognize this statutory rule.  *In re K-V Discovery Sols.*, 2013 WL 501721, at *2 (Bankr. S.D.N.Y. Feb. 11, 2013) is on all fours.  In *K-V Discovery*, the debtor had purchased a drug, "Makena," pursuant to an agreement that granted a security interest in Makena to the seller and included an obligation that the debtor retransfer Makena to the seller, Hologic Inc., "free and clear of all Encumbrances" upon default. *Id*. at *2.  "Encumbrances" were defined in that agreement to include "any 'claim, mortgage, pledge, ... security interest, ... lease, lien, ... [or] license....'" *Id*.  The debtor subsequently issued a series of Senior Notes, which were secured by certain property of the debtor, but contained an exclusion for Makena, similar to the exclusion for Principal Property in the PGN PPSA. *Id*. at *3.  The "Excluded Assets" definition

2

stated that "Makena and the Company's rights therein shall not be Collateral until such time as the Lien on such assets in favor of Hologic, Inc. granted pursuant to the Makena Agreement is terminated." *Id*. The Senior Note indenture then created a springing lien, stating:

> Upon payment of the Company's final payment under the Makena Agreement, the Company shall promptly . . . grant to the Collateral Agent, for the benefit of the Secured Parties, a first priority security interest (subject to Permitted Liens) in all of the Company's interests in Makena.

*Id*. at *4.

Before the springing lien was triggered, the debtor filed for Chapter 11 relief, and the Senior Noteholders claimed that they had a pre-petition secured interest in Makena. The court held that they did not, because the security agreement "excludes from the Noteholders' lien 'any of the Company's right, title or interest in Makena or the Makena Agreement' until such time as Hologic shall have been fully paid." *Id*. Therefore "it is evident that the documents did not provide the Secured Noteholders with a prepetition lien on the Debtors' right, title, or interest in Makena and the Makena Agreement." *Id*. at *7.

*Victor v. City of Houston*, 1998 WL 104963, at *2 (Tex. App. Mar. 12, 1998) involved a security agreement that postponed attachment of any interest in the collateral until the occurrence of a condition subsequent. *Id*. After the debtor defaulted on its loan, but before the condition occurred, the secured party sought to enforce its lien against inventory that had already been sold, but remained in debtor's possession. *Id*. at *1. The court held that because the condition subsequent had never occurred, the postponed attachment never took place. *Id*. The result is the same here; the springing lien never sprung, and the postponed attachment never took place.

*Victor* and *In re K-V Discovery* are instructive because they addressed whether a contingent security interest had attached to property prior to the condition having occurred.[2]  Both courts held that there is no attachment, and thus no enforceable security interest where, as here, a springing lien has not sprung.

**B.     Filing a Financing Statement Does Not Attach any Interest to Collateral**

The mere filing of a UCC-1 financing statement does not create a perfected security interest where, as here, the property holder has not granted such an interest and where, as here, no interest has attached.  The UCC provides that a "financing statement may be filed before a security agreement is made or a security interest otherwise attaches."  Tex. Bus. & Com. Code Ann. § 9.502(d); N.Y. U.C.C. Law § 9-502(d) (same).  *See also In re Oak Rock Fin., LLC*, 527 B.R. 105, 115 (Bankr. E.D.N.Y. Mar. 19, 2015) ("The purpose of the financing statement is not to create a lien, but to give notice to third parties of the possible existence of a lien."); *In re K-V Discovery Sols.*, 2013 WL 501721, at *4, n.9 ("While the UCC–1 Financing Statement provides that it 'covers all assets of the Debtor' . . ., a financing statement cannot expand a security interest beyond that which is granted in the security agreement.")  Filing a UCC-1 relates to the third prong of perfection, notice to third parties; it does not grant or attach an interest in collateral.  U.C.C § 9-502(d).

---

[2]      There is no dispute that if the springing lien had occurred, the PGN Noteholders would have become secured in the springing collateral covered by their UCC-1 filings, and the equal and ratable clause in the Legacy Indenture would have been triggered, requiring iHeart to breach, cure, or file for bankruptcy protection.  The Court was correct in its hypothetical that if iHeart had granted a security interest to a third party in 2014, between the execution of the PPSAs and the occurrence of the springing lien trigger date, the PGN Noteholders would have a senior claim to the springing collateral after the flip occurred because they had filed an earlier UCC-1 financing statement.   (*See* Hg. Tr. at 115-116).  However, this is not determinative of whether the PPSA constituted an encumbrance or "Mortgage" ***prior*** to the collateral flip.  Before the springing lien trigger date, the 2014 creditor's claim would be senior because the PGN Noteholders would lack a grant and attachment of a lien.  (And, to be clear, because Defendants contend the collateral flip never occurred, they further contend that there has <u>never</u> been a grant or attachment of a Mortgage to the Principal Property or Restricted Subsidiaries, other than the safe harbor grants to the Term Lenders and the 2019 PGNs.)

### C.     Without Attachment, There is no Encumbrance

Plaintiff has implicitly conceded that a mortgage, pledge, lien, charge, or security interest all require attachment as described in U.C.C. § 9-203, but argues that "encumbrance" requires only that the contract right given lessened the value of the relevant collateral.  (Pl. Br. at 25-27.) However, the plain language of Section 1006 of the Legacy Indenture requires that the encumbrance attach to some secured property.  Replacing "Mortgage" with "encumbrance" in Section 1006 illustrates this point:

> The Company will not, nor will it permit any Restricted Subsidiary to, create, assume, incur or suffer to exist (i) any [encumbrance] **upon** any stock or indebtedness of any Restricted Subsidiary, . . . **to secure any Debt** of the Company or any other Person (other than the Securities), and (ii) any [encumbrance] upon any Principal Property, . . . **to secure any Debt** of the Company or any other person (other than the Securities) without in any such case making effective provision whereby all of the Securities Outstanding **shall be directly secured equally and ratably** with such Debt.

An encumbrance that does not attach "upon" anything cannot "secure" debt and therefore is not violative of the negative pledge in Section 1006, and would not require equal and ratable treatment even if it was a "Mortgage."  *Id*.  Similarly, a parallel grant of such an "encumbrance" to the Legacy Noteholders would not "directly secure" anything.  *Id*.

An encumbrance is a "claim or liability *that is attached to property or some other right* and that may lessen its value, such as a lien or mortgage."  ENCUMBRANCE, Black's Law Dictionary (10th ed. 2014) (emphasis added).  Bankruptcy Courts apply this definition to determine whether an encumbrance has been created.  *See In re Mirant Corp*., 389 B.R. 481, 493 (Bankr. N.D. Tex. May 15, 2008) ("The term 'encumbrance' is not defined in the Bankruptcy Code.  Black's Law Dictionary, however, defines an encumbrance as '[a] claim or liability *that is attached* to property or some other right and that may lessen its value, such as a lien or mortgage; any property right that is not an ownership interest.'" . . .  Woodstone's claims do not attach to

N.Y. Gen's property; . . . Clearly, Woodstone is not asserting an "encumbrance" against N.Y. Gen's property.") (emphasis added). The rule that there is no "encumbrance" until the moment of attachment was also recognized in *In re K-V Discovery Sols.*, 2013 WL 501721 at *6, where, like here, the springing lien was specifically drafted to avoid granting an "encumbrance" on the collateral. There, the court held that there was no "encumbrance" prior to the actual attachment of an interest in the collateral. *Id.* at *6-7. These are not *Lochner*-era decisions from foreign state courts; they are recent authority from bankruptcy courts recognizing that no "encumbrance" exists until attachment actually occurs.

The same principle was recently recognized by the Second Circuit in *Matter of MPM Silicones, L.L.C.*, 874 F.3d 787, 792 (2d Cir. Oct. 20, 2017). *MPM Silicones* involved distributions to Second-Lien Noteholders who were secured by a springing lien similar to those granted to the PGN Notes in this case. The Second Circuit noted that:

> The Second-Lien Notes were to be unsecured until the $118 million of previously exchanged Subordinated Notes were redeemed, at which point the "spring" in the lien would be triggered. 15-1771 JA 517, 580-81. Once triggered, the Second-Lien Notes would then (***but only then***) obtain a security interest in the Debtor's collateral. The exchanged Subordinated Notes were redeemed in November 2012, 15-1771 JA 721, ***at which point the trigger occurred and the Second-Lien Notes became secured*** with second-priority liens junior to other pre-existing liens on the Debtors' collateral.

874 F.3d. at 792 (emphasis added). Other courts have reached the same result in analogous situations. [3]

---

[3]   *See S. Texas Med. Clinics, P.A. v. Phycor, Inc.*, 113 F. Supp. 2d 1094, 1100 (S.D. Tex. Sept. 8, 2000) (springing lien on receivables created "***no interest*** in the receivables that are not yet part of its defined collateral and the receivables cannot become collateral until PhyCor fulfills the condition precedent.") (emphasis added); *Hadley Realty Corp. v. Lawyers Title Corp. of New York*, 37 N.Y.S.2d 658, 660 (City Ct. May 14, 1942) ("As the assessment referred to above had not become a lien when title closed it did not constitute a lien or encumbrance or valid objection to taking title under the contract."); *Hastings v. Twenty-Third Ward Land-Improvement Co.*, 61 N.Y.S. 998, 999–1000 (N.Y. App. Div. Jan. 5, 1900) ("prior to the time of the entry of this order there was no assessment imposed upon these premises, and the assessment was not an [e]ncumbrance upon the premises prior to that day."). *In re Dolly Madison Indus., Inc.*, 351 F. Supp. 1038, 1042 (E.D. Pa. Nov. 27, 1972) ("Although the parties intended to provide a security interest for Mrs. Groff, it was their further intent that such security interest

As a matter of fact and of undisputed statutory law, the PPSAs did not grant or attach any interest to the Principal Property or subsidiary equity when they were executed (excepting the safe harbor grants to the Term Loan and 2019 PGNs).  This means, as a matter of law, there was no pledge, lien, encumbrance, charge or security interest of any kind, and thus no "Mortgage" under the Legacy Indenture.  This presents an independent reason to deny the Plaintiff the relief it seeks in this case.

---

would not be capable of attaching until the event of an uncured default . . . Because there was no uncured default until January 7, 1971, Mrs. Groff's security interest was not capable of attaching until that date."); *In re Shannopin Mining Co.*, 1992 WL 165839, at *3 (Bankr. W.D. Pa. July 9, 1992) (no security interest granted where "the documents are equally as clear that the security interest in the first miner would not attach until conditions precedent named by Phillips in ¶ 5(b) of the Letter Agreement were satisfied [and] [t]he parties agree that these conditions were never satisfied").

October 23, 2018

<u>/s/  Patricia B. Tomasco</u>
Patricia B. Tomasco (TX Bar No. 01797600)
Matthew D. Cavenaugh (TX Bar No. 24062656)
Jennifer F. Wertz (TX Bar No. 24072822)
**JACKSON WALKER L.L.P.**
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone:      (713) 752-4200
Facsimile:      (713) 752-4221
Email:            ptomasco@jw.com
                     mcavenaugh@jw.com
                     jwertz@jw.com

*Co-Counsel to the Debtors*
*and Debtors in Possession*

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Anup Sathy, P.C. (admitted *pro hac vice*)
Brian D. Wolfe (admitted *pro hac vice*)
William A. Guerrieri (admitted *pro hac vice*)
Stephen C. Hackney, P.C. (admitted *pro hac vice*)
Richard U. S. Howell (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200
Email:            james.sprayregen@kirkland.com
                     anup.sathy@kirkland.com
                     brian.wolfe@kirkland.com
                     will.guerrieri@kirkland.com
                     shackney@kirkland.com
                     rhowell@kirkland.com

-and-

Christopher J. Marcus, P.C. (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
Email:            christopher.marcus@kirkland.com

*Co-Counsel to the Debtors*
*And Debtors in Possession*